## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

In re:                                        Case # 6:14- BK- 10901
Ronald Pillay                                 Chapter 7

       Defendant.
_____/
4 Corners Investment, LLC. , a Colorado
       Limited Liability Company
              Plaintiff          Adv. No. 6:15-ap 0059

Vs.

Ronald Pillay
       Defendant
_____
    4 CORNERS INVESTMENT, LLC's AMENDED EXCEPTION TO DISCHARGE, TOTAL
          DISCHARGE   AND ALTER EGO COMPLAINT
_____

      Comes now 4 Corners Investment, LLC. (CREDITOR), by and through their undersigned

counsel files this Exception to Discharge total Discharge and Alter Ego Complaint

pursuant to Section 523 (a)(2)(A), 523 (a) (2)(B), 523(a)(4), 5 2 3 (a)(6),

727(a)(2)(A),727(a)(2)(B), 727(a)(3), 727(a)(4)(A),727(a)(4)(B),727(a)(4)( C)and

(D)f the bankruptcy code  against Ronald Pillay (Debtor), and alleges:

**A. Jurisdiction and Venue**

      1.     This complaint is filed pursuant to 11 U.S.C. § 523(a)(2), 523(a)(4),

523(a)(6), 727(a)(2)(a), 727(a)(2)(b),727(a)(3),727(a)(4)(a),

727(a)(4)(b) 727(a)©727(a)(4)(D) of the bankruptcy code against

Ronald Pillay (Debtor), and alleges

      2.     This Court has jurisdiction to hear this case under 28 U.S.C. § 157 and 1334.

      3.     This is a core proceeding under 28 U.S.C. § 157(b)(2).

      4.     Venue is proper under 28 U.S.C. § 1409.

      5.     The Plaintiff has standing to bring this action pursuant to 11 U.S.C. Sec.

523(a)(2)(A),523(a)(2)(B), 523(a)(4),523(a)(6), 727(a)(2)(A),727(a)(2)(B), 727(a)(3),

727(a)(4)(A),727(a)(4)(B),727(a)(4)( C) and 727(a)(4)(D), of the bankruptcy code.

**B. General Allegations**

6.    On September 27, 2014, Debtor filed a Voluntary Petition under Chapter 7 of the Bankruptcy Code.

7.    The United States Trustee appointed Carla Musselman to serve as Chapter 7 trustee.

8.    The Chapter 7 trustee conducted the meeting of creditors on 11/15/2014, 2/6/2015, 4/3/2015 and 5/01/2015.

9.    The meetings were continued in part to allow the Debtor to bring additional documents to the meeting so the parties could question him.

10.    The Debtor failed to bring all of the documents requested by the Chapter 7 trustee.

11.    The Debtor was examined at each of the §341 meetings of creditors.

12.    The Court has granted Plaintiff's Motion for Extension of Time for Filing a Complaint to Object to Discharge and to Except Discharge of the Debtor.

13.    The meeting of creditors was concluded on May 1, 2015.

14.    The Debtor is a college graduate immigrant from So. Africa.

15.    The Debtor is a sophisticated business man. Debtor is the owner, manager, registered agent, general partner, member and or limited Partner in over 20 different limited liability companies or partnerships.

16.    Debtor has obtained real properties and notes/mortgages secured on real property through his name, his Trust, his wife June Pillay [hereinafter "June"], son Bradley Pillay [hereinafter "Brad"], and/or daughters Ramona Pillay or Prevashini Pillay [hereinafter "Prevashini"] or one of his separate "Alter Ego" entities.   At acquisition, Debtor has one of his family members or one of his legal entities take title, mortgage the property, then quit claim the newly acquired property to the entity Prevash, whose sole member is Yallip (of which Debtor formerly was a 47% owner with his wife June owning the other 47%, and each of his children had 1%) or any of approximately 20 different, separate limited liability companies.

17.     For over fifteen (15) years, the Debtor has had a history of owning and operating low end mobile home parks throughout several states in the U.S. and other rental/income producing real properties similar to the two parks in Lakeland he conspired to sell to Plaintiff/s with his co-defendants in the civil case.

18.     Creditor filed its lawsuit against Debtor/Defendant Pillay in the Circuit Court in Polk County, Florida; case no. 2013CA-004246. Section 04.  The style of the case is 4 Corners Investment LLC., and Connection Wise, LLC. vs. Ronald Pillay, Voyager Enterprises, Inc. (Co-conspirator hereinafter called "Voyager") , its sole officer, Christopher Marostica, Reynolds Rd, LLC., and its sole member/manager,  Scott Zuckman, all co- defendants. A copy of the Amended Complaint is attached as Exhibit. A and is incorporated by reference.

19.     The Debtor has named Plaintiff as a creditor in his bankruptcy schedules.

20.     The Civil lawsuit is currently pending.

21.     The state court case is an action against the Defendants, including the Debtor, for fraudulent inducement, fraudulent misrepresentation, and negligent misrepresentation amongst others; the Amended Complaint filed in the civil suit, attached as Exhibit A, is one action as the Debtor/Defendants intertwined two different property's sales, even though two separate legal entities were owners and two separate legal companies were buying each separate property.  All conspirators insisted that the properties could not be sold separately due to the Defendant/Voyager's mortgage, secured on the Tenoroc property only.  Attached and incorporated by reference as Exhibit B is a letter dated 4/27/2013 to Zuckman from Debtor regarding assistance.

22.      Debtor conspired with the Sellers, who were losing all of their investments in the two properties due to its delinquency, by agreeing to discount the mortgage by $60,000 as long as they were able to induce Plaintiff/s to close the transactions by May 1, 2015; which they did. The mortgage was in default since January 2011.  Attached and incorporated by reference as  Exhibit C which is a letter sent by Debtor to Christopher Marostica for a payoff offer along with the amortization schedule of the note showing that the balance prior to the discount was reached January 2011.

23.    Debtor sold Tenoroc to George Hwang in 2004 [Polk County INSTR. # 2004050382, Bk 05704, pgs 0951-0952]; through Debtor's alter ego, Junron Florida, Inc..   Debtor had misrepresented Tenoroc to Hwang as to the condition and its income history in a similar fashion as his misrepresentations to Plaintiff.   Debtor bankrupted Hwang through prolonged litigation as he has attempted, with his co-conspirators, to do to Plaintiff/s, see lawsuit filed in Hillsborough County Fl, case# 05-CA-001813, Hwang VS Junron Florida Inc, incorporated by reference.

24.    Debtor and his wife June personally foreclosed on the purchase money mortgage they took from Hwang [not the "seller Junron Florida Inc.] in January 2010. At the time they took title, they were aware of Polk County's intended notice of Demolition, See Exhibit D which is attached and incorporated by reference.  Debtor immediately attempted to sell Tenoroc "as is" to Scott and Albert Ford, but, the Fords discovered Debtor's non-disclosure of the impending Notices of Demolitions posted on all improvements at Tenoroc.  Debtor removed the notices as posted prior to the Ford's inspection, see Polk County Fl., case# 53-2010CA-003985-0000-00, Section 4, Ramona Lincoln Mobile Home Park, LLC VS Albert Ford et.al.

25.    Debtor, acting as a partner/manager/agent with all Polk County Departments, obtained an extension of the 30 day period allowed in the Demolition Notice.  The Extension is attached as Exhibit E and is incorporated by this reference.

26.    When the Ford contract failed to close, Debtor, through his alter Ego entity, Ramona Lincoln Mobile Home Park, LLC.,sold Tenoroc to Voyager 4/5/2010 with a purchase money mortgage to be held by Junron Florida Investments, LLC., yet another alter ego entity Debtor and his wife controlled.   Polk county recorded and published the notice of Demolition 11/11/2010.

27.    Debtor sold the Reynolds property to Ray and Denise Weems through another alter ego, Statesman LTD.   By the end of 2010, Reynolds was pretty much vacant and the Polk County Building Department had numerous code violations on the mobile homes and infrastructure. A copy of the notice from the Building Department Inspector Harold Burgess is attached as Exhibit F and is incorporated by reference.

28.    Debtor reacquired Reynolds and sold it to Reynolds Rd, LLC/Zuckman for $200,000 on a land contract; A copy of which is attached as Exhibit G and is incorporated by reference,

Debtor's assignment of his contract to buy Reynolds back from Weems Debtor's statement as emailed to Equity title company for the closing of Zuckman's purchase is attached as Exhibit H, attached and incorporated by reference.

29.    Debtor's co-conspirators, Zuckman and Marostica/Voyager, had a long relationship with Debtor as they had purchased 4 similar mobile home parks, in very bad condition with poor rent collections from Debtor in 2008-2009 located in Oklahoma.   Debtor and his son Bradley Pillay managed these parks for Voyager and the properties did not make enough to cover the repairs and or debt service, see Exhibit I 12/4/2012 letter from Zuckman offering to give all of the Oklahoma properties back to Debtor.  Said Exhibit is incorporated by reference.

30.    Debtor took position of the Oklahoma properties from Voyager in December of 2012, Exhibit I attached and incorporated by reference.

31.    The evidence of the default of Voyager's note secured on Tenoroc (see ¶22), is further supported by the composite of Debtor's alter ego, Yallip Investments, LP's bank statements, as provided to the Trustee in this action showing the money transfers from Voyager's and Reynolds Rd.'s Wells Fargo accounts reimbursing Debtor for funds expended doing repairs on both properties. Debtor transferred ½ of Plaintiff's $300,000 owed to Junron its defaulted mortgage from Yallip's account at Bank of America ending in 3138, to Yallip's bank account in Bank of America ending in 3125 after these funds were wired to Yallip May 2, 2013.

32.    Tenoroc was sold to Voyager by alter ego, Ramona Lincoln Mobile Home Park, LLC, all monies owed to Debtor were paid to alter ego Yallip.   In Debtor's testimony to the Trustee herein, during the 341 hearings, Debtor admitted that all monies due to any of his alter ego companies that Debtor controlled and managed all were paid into Yallip's account/s since the other alter go companies did not have bank accounts (except Lakeway Park, LLC), file tax returns or keep separate accounting records.

33.    The bank statements discussed in §30-32 show Yallip's status as a mere instrument of Debtor and his entire family listing this Yallip account's 7 debit cards issued to all of Debtors family members to be used for all personal needs and expenditures such as entertainment, liquor, beauty shops, pet supplies, etc.  Yallip account was also used by other alter ego entities such as Prevash to

pay utility charges and association dues as well as for legal costs for Debtor's filing of this Bankruptcy action.

34.     Debtor's Petition for relief pursuant to Chapter 7 that he filed in September 2014, did not list his transfer of all his interest in Yallip as he claimed on 5/12/2012; see Exhibit K attached hereto and incorporated herein by this reference.   Debtor did not disclose the sale of his Indiatlantic Condo 10/28/14 through his alter ego Prevash, which is really Yallip, both mere alter egos for Debtor, with the assistance of his Daughter Prevashini and his wife, June.

35.     Referring to paragraph 22 above, Debtor did not appear to want possession of the properties due to all of the money needed to bring them up to code and the mobile homes up to the condition needed to rent these units to qualified tenants; see Exhibit "D", "E", "F"   attached hereto and incorporated herein by this reference.

36.     Even though Debtor was no longer a partner in Yallip (Exhibit F,), Exhibit L, attached and incorporated by reference indicates Debtor's interwoven use of his alter ego entities and that Debtor kept total control of all entities.   Exhibit M, attached and incorporated herein by reference, is the document dissolving the alter ego entity known as Pillay Family One, wherein Debtor instructs that he is the only individual with the authority to execute all needed documents; this transfer of ownership was not listed on Debtor's Petition filed herein; these Articles of dissolution were filed August 31, 2014, just weeks before filing under Bankruptcy Code Chapter 7.

37.     Debtor used Voyager and Reynolds Rd. as his personal alter ego entities in dealings with Polk County regulatory agencies.  Refer to Exhibit "E" and  Exhibit N, both attached hereto and incorporated herein by this reference.

38.     Debtor took over the operation of the two subject properties, controlled all rent collections and reports from the manager sharing the duties for both properties at the end of 2012; Proof of the collections and reports are attached as Exhibit 0,incorporated by reference.

39.     Debtor also represented himself as an owner in his internet presentations posted on the internet which contained the misrepresentations of the income and condition of the properties, attached as Exhibit P and is incorporated by reference.

40.    Debtor, and his coconspirators, misrepresented the historical income, expenses and condition of the properties were by email, intrastate.   The subject properties were being operated as one property with one owner; See Composite Exhibit Q, attached and incorporated by reference, email representations as to income and condition of the properties.

41.    Debtor drafted contracts, sending these drafts to Plaintiff in lieu of the co-conspirator's attorney; See Composite  Exhibit R, attached and incorporated by reference.

42.    Plaintiff/s believed the lack of Estoppel letters and complete leases that were to have been furnished at closing, as well as Debtor's apparent negligent acts as Seller's broker and attorney, were due to Debtor's lack of experience and his improper actions usually performed by brokers and attorney's.

43.    Plaintiff/s refused to release their $300,000 down payments to purchase the subject properties until the closing agent, Sue Fulco at Equity title company drafted the attached May 1, 2013 Addendums, and Seller/s signed them.  These Addendums to the final contracts reaffirmed all warrantees in the Contractual documents and other last minuet adjustments; Composite Exhibit S attached and incorporated by reference.

44.    Fulco received a Fax from Zuckman at 7:20 P.M. the night of the closing on May 1, 2013, which contained not only the signed settlement sheets and the signed Addendum reaffirming that all Seller's warranties, but a disclosure from Zuckman listing all of the defects he was aware of at Reynolds.  These disclosures prove that the same deficiencies noted in Exhibit "F" in 2010 had not been corrected.  Fulco did not show this disclosure to Plaintiff/s.  All disclosure was to have been made prior to April 7 (called for in the contractual documents), see attached Exhibit T which is incorporated by reference. Said Exhibit does not include Plaintiff's initials or signature as accepting these delinquent disclosures.

45.    The Title Company, Equity Title (agent Fulco) issued Title insurance for Tenoroc to Plaintiff based upon the false representations of Debtors as to the satisfaction of all items required in the title commitment without any documentation showing that the lien had been satisfied or released and with full knowledge of the deception.

46.    The Title Commitment Fulco provided on Reynolds omitted requirement "f" as was in the Tenoroc commitment "Pertaining to mobile homes: 1. Issuance of RP series sticker and affixing to the lower left corner of the window closest to the street providing access to the residence as required by Sec. 320.0815(2), F.S.; 2. Proof of Certificate of Title for mobile homes, with such assignments thereon as may be necessary to show title in the borrowers, as filed with the Department of highway Safety and Motor Vehicles;"; See Exhibit U, attached and incorporated by reference.

47.    The Title Company, Equity Title (agent Fulco) issued Tenoroc's Title insurance to Plaintiff based upon the false representations emailed through of Debtor, Exhibit V, attached and incorporated by reference, implying the conditions contained in the Demolition Notice had been satisfied as in the title commitment; see Composite Exhibit W, attached and incorporated by reference.

48.    Debtor conspired with his co-conspirators in the civil action to salvage their lost investments in the two subject properties and procure a profit over time, as opposed to Debtor foreclosing upon the note secured by Tenoroc.   Through their fraudulent acts Debtor obtained $300,000 in unjust enrichment and his co-conspirators obtained purchase money mortgages in a total amount of $634,414.00 instead of losing all of their investments in these properties, Exhibit X, attached and incorporated by reference, Fulco's closing statements.

49.    Plaintiff/s soon discovered the gross deceptions as to not only potential cash collectable, but in the horrible condition of the infrastructure and homes in both properties.  Within 5 weeks of purchase, Plaintiff/s asked for recision, detailing their discoveries at that point; See Composite Exhibit Y attached and incorporated by reference.

50.    Fulco did not have the necessary documentation from the legal mortgage holder as to the mortgage payoff (Exhibit "C"), nor did Fulco have the executed titles of the mobile homes included in the sale to transfer to Plaintiff

before wiring Plaintiff/s's funds to Debtor/Yallip; see Exhibit Z, attached and incorporated by reference, Debtor's wiring instructions to Fulco.

51. The motivation for the conspiracy to defraud Plaintiff/s was the unjust enrichment of $300,000 Debtor received and the Co-conspirators ability to salvage their lost investments in the two subject properties through the purchase money mortgages in a total amount of $634,414.00. The Plaintiff never made any of the payments called for in these mortgages as stated in their recession correspondence resulting in Debtor's co-conspirators filing three motions in the Civil action to force full payments on these fraudulently obtained mortgages under Florida § 702. The Court ordered the payments made into the registry. All conspirators are trying to cause Plaintiff/s to go bankrupt through the lawsuits.

52. The magnitude of the coconspirators acts is exacerbated by the fact that these were interstate transactions subject to the RICO doctrine, but Plaintiff/s financial damages are such that they do not have the resources to pursue a Federal action.

53. Debtor testified in the 341 meetings in this case at hand that he had never owned a home or any property, but Debtor listed in his Petition, under Schedule F several unsecured creditors related to mortgages Debtor is liable for:

| | |
|---|---|
| Chase Home Finance | $176,555 |
| Seterns Inc, real estate mortgage | $199,266 |
| Wells Fargo Jacksonville | $176,555 |
| Wells Fargo North Carolina | $213,000 |

A. In Section 19(d)of his Petition, Debtor stated he had not submitted any financial statements. Lenders are required to file a yearly financial statement for lines of credit, so it is unlikely that he had not submitted such statements to any of the lenders he had loans with.

B. In the Bank of America Bank Statements Debtor provided to the trustee, accounts owned by Yallip, there are payments for home mortgages, vehicles, and even home owners' dues on the 995 A1A #105, Indiatlantic, Fl. condo owned by Prevash and sold October 14, 2014 after filing for Chapter 7 relief .

54.     On Debtor's personal tax returns, Debtor deducts interest on mortgages and real estate taxes on the properties owned through his daughter Prevashini and or one of his alter ego entities, often Prevash.  These items were paid out of the Yallip bank accounts.

55.     In Debtor's Rule 341 hearings he stated he had never owned a home or other real property, but in section 4 of Debtor's Statement of Financial affairs, #5, Debtor lists foreclosures of  three properties.

56.     In Debtor's Petition, under Schedule G, Debtor stated he had an oral lease agreement with his daughter Prevashini to live in the home at 2490 Hindsdale Dr., Kissimmee, FL.  34741, but that property was owned by Prevash at the time Debtor filed his Petition.   Prevashini is not a member or officer of Prevash. After filing his petition, Debtor caused Prevash to quit claim the home back to Prevashini in order to cover his mistake.

57.     On Debtor's Statement of Financial Affairs, #3, payments to creditors, Debtor did not disclose that he paid mortgage payments, home owners dues, vehicle loans, etc. out of Yallips'' bank accounts before and since filing for Chapter 7 bankruptcy.

58.     On Debtor's Statement of Financial Affairs#10, Debtor was the only member/manger of Lakeway Park, LLC.,as he stated in his Rule 341 hearings, but the transfer of the loan Debtor owed as secured on the Lakeway Park in Oklahoma, and the transfer of his entire interest in Lakeway Park, LLC., indicates he hid his ownership in this alter ego LLC.   This transfer of the liability for his debt, incurred January 28, 2014, occurred in July 17, 2014, two months prior to filing this Chapter 7 action, but liability and transfer was never disclosed in Debtor's Petition.

59.     Lakeway had its own bank account.  Debtor opened that account with cash from undisclosed sources, paid money from Lakeway into Yallip and signed checks from Yallip to Lakeway, after he had resigned from Yallip in 2012 as stated in his Petition, beginning April 3, 2014.

60.     Debtor withdrew cash from Yallip's Arvast bank account, 4/28/14.

61.     Debtor transferred his interest in Lakeway July 17,2014 to Sam Wen, Exhibit J a, and J b, J c, each attached and incorporated by reference, two months before filing for Chapter 7 relief, but this transfer was not disclosed.

62.     Prevash, owned solely by Yallip, contracted to sell of its Oklahoma mobile home parks Debtor, May 5, 2014, just 4 months prior to fining for Chapter 7 relief, and, again the debt relief and the new purchase money mortgages were run through Yallip, see Exhibits J d & J e both attached and incorporated by reference.

63.     Debtor formally transferred his 47% interest in Yallip, pursuant to the Amended Partnership Agreement dated October 2013, 11 months prior to filing for Chapter 7 bankruptcy; this transfer was not reported in Debtor's Petition.

64.     The Pillay Family Trust bought and sold at least one mobile home park and more than one mobile home, but this information was not disclosed; Debtor is a 50% beneficiary of this Trust.

65.     On Debtor's Statement of Financial Affairs #1, Debtor did not disclose an account at J.P. Morgan.

66.     On Debtor's Statement of Financial Affairs #12, one of the alter ego entities and or Bradley Pillay, had a safe deposit box at a local Tahlequah Credit Union in which Debtor kept cash from rents collected and not reported on tax returns for himself or any entity.

67.     On Debtor's Statement of Financial Affairs#14,Debtor did not list the properties owned by family members, Prevash or Yallip that he controlled, Exhibit FF, attached hereto and incorporated by reference, a chart of the entities and people transferring deeds.

68.     In March 2014, Debtor was the registered agent for Pillay Family One LLC. The Pillay Family Trust and Yallip were the officers and or owners of this LLC; Debtor dissolved this entity in August 2014 and did not disclose this transfer.  Debtor was the registered agent and the only person authorized in 8/2014 to handle the dissolving of Pillay Family One, LLC, owned by Yallip, see Exhibit GG, attached and incorporated by reference.

69.     Junron Florida Investments, LLC. owned the mortgage secured on the subject Tenoroc property.  In 2010, the managing Member was the Pillay Family Trust.   The Trust then transferred its ownership to Yallip LP, which Debtor did not report.   In April 2013, Debtor ordered the payoff of the Junron note be paid into the Yallip bank account.  This payment of

$302,000 was never reported on any of Debtor/Yallip's tax returns for 2013, and Junron never filed any tax returns for any payments it received, if any, from Voyager.

70.    Debtor not only reported falsely in his Petition, he also did not report the $302,000 gain on the tax return in 2013, and Debtor took deductions on his and his wife's return for items paid by his alter ego entity, Yallip., even though Yallip did file tax returns, they were knowingly false as indicated above.

## COUNT I- WILLFUL AND MALICIOUS INJURY 523(a)(6)

71.    Plaintiff re-alleges the allegations of paragraphs 1 through 70.

72.    Count I is brought pursuant to Bankruptcy Section 523(a)(6).

73.    At the time Debtor made all false representations regarding the condition and income of the subject properties, he was in full control of the management, rent collections and had in his possession weekly reports from the property managers that Debtor hired and supervised.

74.    On April 17, 2013, Debtor presented Plaintiff/s with an Addendum to negate the warranty section of the contracts which Plaintiff/s; see Exhibit AA which is attached and incorporated by reference, emailed them to his coconspirators who promptly signed them and faxed them back to Debtor to obtain Plaintiff's signature; Plaintiff/s liked and trusted Debtor, so Jerry Stang, Managing Manager, promptly signed them when alone with Debtor.

75.    At all times from January 1, 2013 to the day of closing of the purchase of the subject properties, Debtor controlled all operations and Debtor supplied the documents directly needed for closing to the closing agent, Fulco, in lieu of the "Sellers"/coconspirators or any attorney or broker they could have hired.

76.    At all times Debtor knew that the subject combined properties would lose money and Plaintiff/s would not be able to meet the debt service as contained in the purchase money mortgages he negotiated and drafted with the cooperation of all conspirators and therefore these conspirators would, most likely, be able to take the properties back in foreclosure.

77.    Debtor, by providing all of the material information regarding the purchase and sale of the subject properties, negligently and intentionally concealed material facts from

Plaintiff.   Debtor and his co-conspirators knew that the mobile homes were not up to code and could not legally be rented.   Just prior to Plaintiff/s trip to the properties for due diligence purposes, Debtor painted over mold, hid evidence of the leaking roofs, put abandoned furniture over weak spots in the floors and moved vagrant, homeless people into the mobile homes in direct violation of the Polk Count Ordinance 11-107.

78.     Zuckman admitted that he did not visit the properties and he relied on Debtor, See attached Exhibit BB, attached and incorporated by reference.   Zuckman was the authorized Manager for both Voyager and Reynolds. See Exhibit "T". The disclosure from Zuckman shows that Debtor kept his conspirators informed of the conditions.   As stated in Exhibit "T" ,Reynolds infrastructure and units were not in good working order as warranted; all conspirators were aware of the conditions.

79.     The conspirators knew the sewer system at Tenoroc was not in good working order as they had obtained a bid to scope the sewer system lines and had direct knowledge that the terra cotta pipe used in the system was crumbling and clogged with oak tree roots and thus needed to be replaced in late 2012.

80.     Debtor was aware that there were open building permits that he had filed personally and under the name of Yallip LP which had failed Polk County Building Department's inspections still outstanding in both properties.

81.     Debtor, in undertaking to provide material information to Plaintiff  regarding the purchase and sale of the subject properties, had a duty to disclose all material facts known to him, and to ensure that his representations were accurate to the best of his knowledge; Debtor breached his duties with willful and wanton disregard fully knowing the harm the conspirators would cause the Plaintiff/s.

82.     Debtor and his co-conspirators knew, or should have known of the true condition of both Properties and made the aforementioned misrepresentations and/or omissions with reckless disregard as to the falsity of all of the misrepresentations.   All of the Conspirators involved in Plaintiff/s purchase of the subject properties  were aware of the liability they were subjecting Plaintiff/s to.

83.     Debtor and his co-conspirators knew, or should have known of the true condition of both Properties and made the aforementioned misrepresentations and/or omissions with reckless disregard as to the falsity of all of the misrepresentations.

84.     Plaintiff relied upon Debtor's/coconspirators misrepresentations and/or omissions in deciding to execute the Contracts and allow funds to be disbursed to Debtor.

85.     Debtor, in undertaking to provide material information to Plaintiff regarding the purchase and sale of the subject properties, had a duty to disclose all material facts known to him, and to ensure that his representations were accurate to the best of his knowledge; Debtor breached his duties with willful and wanton disregard fully knowing the harm the conspirators would cause the Plaintiff/s.

86.     As a proximate result of Plaintiff reliance upon these material misrepresentations and/or omissions, Plaintiff was induced to purchase Properties and has suffered damages in an amount exceeding $320,000.00. Those damages continue to accrue.

87.     Debtor courted Plaintiff's favor, inducing Plaintiffs trust, pretending to befriend Plaintiff, in cooperation of his wife June, and thus rely on the truthfulness of all Debtor's representations.   Exhibit CC, which is attached hereto and incorporated by reference.

88.     Debtor, with the help of all the other conspirators, was involved in the complicated, interwoven acts of this conspiracy and deliberately and intentionally caused Plaintiff/s' economic injury without just cause or excuse.

89.     Debtor, with the help of all the other conspirators, was involved in the complicated, interwoven acts of this conspiracy and deliberately and intentionally caused Plaintiff/s' economic injury without just cause or excuse.

90.     Plaintiff was justified in relying upon the misrepresentations and/or omissions in deciding to execute the Contract/s and when Plaintiff gave its combined funds for the down payments to the closing a g e n t  F u l c o, the last conspirator to join in the conspiracy to defraud Plaintiff/s.

91.     These acts were done in a willful and malicious way by the debtor to Plaintiff and Debtor should be excepted from discharge under 523 (a)(6).

92.     Debtor transferred his ownership in Yallip in October 2013, in Yallip's formal amended partnership agreement, 11 months prior to filing this petition, and Debtor/Prevash's property in Indiatlantic on October 14, 2014, transferred though his alter ego Prevash, with his daughter, Prevashini, and his wife, June's assistance.

WHEREFORE, the Plaintiff requests that the Court (I) enter a judgment excepting the Debtor's discharge pursuant to 11 U.S.C. Sec. 523(a)(6) and  grant other such relief that the Court deems appropriate.

## COUNT II- COUNT IV FRAUD OR DEFALCATION WHILE ACTING IN A FIDUCIARY CAPACITY 523(a)(4)

93.     Plaintiff re-alleges it's allegations contained in paragraphs 1 through 92.

94.     Count II is brought pursuant to 523(a)(4) of the bankruptcy code.

95.     The actions of the Debtor were done while he was acting in a fiduciary capacity.

96.     Plaintiff was induced to purchase the Reynolds property and has suffered damages in an amount exceeding $320,000.00 as a result thereof.  Those damages continue to accrue.

97.      In order to induce Plaintiff to purchase the subject properties, Debtor made representations he knew to be fraudulent and, as agent of the co-conspirators, there was defalcation while acting in a fiduciary capacity.

98.     Debtor, in undertaking to provide material information to Plaintiff regarding the purchase and sale of the Properties, had a duty to disclose all material facts.

99.     Acting in the capacity of agent of the Sellers/co-conspirators, with their evidenced consent, Debtor had a fiduciary relationship with his coconspirators  which he consciously disregarded.

100.     Debtor, by suggesting his co-conspirators/Sellers sign the March 28, 2013 offer with all of the disclosure requirements and explicit warranties to survive the closing, Debtor placed not only Plaintiffs in harm's way, but the "Sellers" at risk for conviction of fraud, breach of contract and or punitive damages.   Such conduct, knowing all the relevant circumstances,

demonstrates Debtor's gross deviation from the standard of conduct that a law-abiding person would observe in the Debtor's situation.

101.    By and through his conduct, Debtor's acts, along with his co-conspirators acts, were with the intent to inflict extraordinary economic loss on Plaintiff.

102.    Debtor acted with the intention of deceiving Plaintiff as to the true facts about the income and the conditions at the properties, r e p r e s e n t i n g  t o  Plaintiff/s the properties' total combined expenses would not exceed 35% of the $250,000 combined, gross collectable income. Debtor knew the actual history of the collected rents at Tenoroc in the previous 4 years had been less than $53,500/year,  Reynolds $50,000/year over the previous 3 years, 40% less than Debtor represented.  D e b t o r  a n d  h i s  c o - c o n s p i r a t o r s  k n e w  t h a t  t h e  e x p e n s e s  for Tenoroc and Reynolds totaled $120,000  in 2012, without repairs, 30% more than represented with repairs included.

103.    Debtor drafted and emailed to Plaintiff (with the full knowledge of all conspirators) the FL BAR "as is" commercial purchase contract, which Plaintiff/s countered with their own offer containing specific Seller warranties.   Debtor negotiated all terms of the contractual documents, sent offers, counter offers and amendments to his co-conspirators to sign, which they did.

104.    Debtor used charm and family, as well as his soliciting a written authorization by his co-conspirators on 4/9/2013 and 4/25/2013, t h a t  s t a t e d  Plaintiff should rely on Debtor's representations; Exhibit DD, attached and incorporated by reference.

105.    Debtor knew that the Plaintiff's would lose money and most likely, their property, to Debtor's co-conspirators and suffer economic harm as a direct result of the conspirators actions.

106.    Debtor has demonstrated  a course of conduct in similar fraudulent acts upon other purchasers of these subject properties, and similar properties, as evidenced by the lawsuit filed in Hillsborough County Fl, case# 05-CA-001813, Hwang VS Junron Florida Inc., lawsuit in Polk County Fl., case# 53-2010CA-003985-0000-00, Section 4, Ramona Lincoln Mobile Home Park, LLC VS Albert Ford et. al., and in the District Court of Cherokee County, Oklahoma, case CJ-2014-211, S & N Property, LLC and Avel Kolesnikov VS Prevash Investments, LLC and Lakeway Park, LLC and Yallip Investments LP, all alter ego entities for Debtor.

WHEREFORE, the Plaintiff requests that the Court (I) enter a judgment excepting the Debtor's discharge as it pertains to the Plaintiff pursuant to 11 U.S.C. Sec. 523(a)(4)and, grant other such relief that the Court deems appropriate.

### COUNT : III USE OF A STATEMENT IN WRITING 523(a)(2)(B)

107.   Plaintiff adopts and re-alleges the allegations of paragraphs 1-106.

108.    Count III is an action pursuant to Section 523 (a)(2)(B) of the Bankruptcy Code.

109.   Debtor has conducted himself as the apparent agent of his co-conspirators by posting offerings to sell the subject properties containing misleading and knowing false representations as to the condition of the improvements on the properties and as to their ability to service the debt as he proposed.

110.   Acting in the capacity of agent of the Sellers/co-conspirators, with their obvious consent based upon the emails between all Parties, Debtor had a fiduciary relationship with his co-conspirators which he consciously disregarded. Debtor acted  illegally by performing acts requiring a license as a real estate broker and or an attorney.

111.    Debtor used email to communicate his false and fraudulent misrepresentations to Plaintiff's. 92. Debtor, by suggesting his co-conspirators/Sellers sign the March 28,2013 offer with all of the disclosure requirements and explicit warranties to survive the closing, placed not only Plaintiffs in harm's way, but the ·'Sellers" at risk for conviction of fraud, breach of contract and or punitive damages. Such conduct, knowing all the relevant circumstances, demonstrates Debtor's gross deviation from the standard of conduct that a law-abiding person would observe in the Debtor's situation.

112.    By and through his conduct, Debtor's acts were made with the intent to inflict extraordinary economic loss on Plaintiff. Plaintiff relied on these written statements which were materially false, which respected the debtor's or insider's financial condition which the creditor relied upon  whom the debtor is liable for such money and/or property reasonably relief upon.

113.    The Debtor emailed written representations which he knew were materially false to Plaintiff representing the Debtor and/or insider's financial condition on which the Plaintiff relied. The Debtor made these writings with the intent to deceive. As a result the Plaintiff suffered damages .

WHEREFORE, the Plaintiff requests that the Court (I) enter a judgment excepting the Debtor's discharge pursuant to 11 U.S.C. Sec. 523(2)(B) as it pertains to the Plaintiff and grant other such relief that the Court deems appropriate.

## COUNT IV- FALSE PRETENSES, FALSE REPRESENTATIONS
## AND CONSPIRACY TO COMMIT ACTUAL FRAUD 523(2)(A)

114.    Plaintiff adopts and re-alleges the allegations of paragraphs 1-113.

115.    Count IV is an action pursuant to Section 523(2)(a) of the Bankruptcy Code.

116.    In order to induce Plaintiff to purchase the Properties pursuant to the Contracts, Debtor made false representations to Plaintiff as well as acting under false pretense and conspiring with other third parties to commit actual fraud.

117.    The material representations were known to be false at the time they were made and continue to be false.

118.    Debtor, in providing material information regarding the purchase and sale of the Properties, actively concealed several material facts from Plaintiff, with the knowledge and cooperation of his coconspirators, and gave Plaintiff, with the knowledge and cooperation of his coconspirators, misleading information as to the historical and expected income, expenses and the poor condition of the infrastructure and mobile homes being conveyed in both of the two subject properties.

119.    Debtor, and his coconspirators, in undertaking to provide material information to Plaintiff regarding the purchase and sale of the

Properties, had a duty to disclose all material facts, but made the aforementioned misrepresentations and/or omissions with knowledge of their falsity and with reckless disregard as to the truth thereof.

120. Debtor, and his co-conspirators, acted with the intention of deceiving Plaintiff as to the true facts about the income and the conditions at the properties, telling them the properties' total expenses would not exceed 35% of the $250,000 gross collectable income. Debtor knew the actual collected rents at Tenoroc in the previous 4 years had been less than $53,500/year, Reynolds $50,000/year in the previous 3 years, 40% less than Debtor and or his co-conspirators, represented. Expenses for Tenoroc and Reynolds combined were $120,000 in 2012, without repairs, 30% more than represented with repairs..

121. Debtor, acting for his alter egos Voyager & Reynolds Rd and or as their agent, drafted a F L BAR "as is" commercial purchase contract, which Plaintiffs countered with their own offer containing specific Seller warranties. Debtor negotiated all terms of the contractual documents, sent offers, counter offers and amendments to his co-conspirators to sign, which they did. Debtor solicited a written authorization by his co-conspirators on 4/9/2013 and 4/25/2013; the Co-conspirators complied and stated Plaintiff should rely on Debtor's representations. See Exhibit EE that is attached and incorporated by reference.

122. Debtor and his co-conspirators knew that the Plaintiffs would lose money and most likely, their property to Debtor's co-conspirators and suffer economic harm as a direct result of their combined actions.

123. Debtor has demonstrated a course of conduct in similar situations and schemes upon other purchasers of these subject properties, and similar properties, as evidenced by the lawsuit filed in Hillsborough County Fl, case# 05-CA-00 1813, Hwang VS Junron Florida Inc., lawsuit in

Polk County Fl., case# 53-2010CA-LLC and A vel Kolesnikov VS Prevash Investments, LLC and Lakeway Park, LLC and Yallip Investments LP. all alter ego entities for Debtor.

124.  Debtor has conducted himself as the apparent agent of his co-conspirators, and in a manner to use Voyager and Reynolds Rd as his alter egos in order to obtain the $302,000.00 wrongful gain specifically described in ¶39,41,74,84,85,87,91,102-104,113,117,118,120 and 121.

125.  Acting in the capacity of agent and or alter ego of the Sellers/co-conspirators, with their obvious consent, Debtor had a fiduciary relationship with his co- conspirators which he consciously disregarded.

126.  Debtor, by suggesting his co-conspirators/Sellers sign the March 28, 2013 offer with all of the disclosure requirements and explicit warranties to survive the closing, Debtor placed not only Plaintiffs in harm's way, but the "Sellers" at risk for conviction of fraud, breach of contract and or punitive damages. Such conduct, knowing all the relevant circumstances, demonstrates Debtor's gross deviation from the standard of conduct that a law-abiding person would observe in the Debtor's situation.

127.  By and through his conduct, Debtor's acts, along with his coconspirators acts, were with the intent to inflict extraordinary economic loss on Plaintiff.

128.  Debtor was a 'knowing active participant' in a scheme or conspiracy through which his co-conspirators contracted, sold the subject properties, breached fiduciary duties all in their combined intentional acts to harm Plaintiff/s.

129.  Debtor held a mortgage through his "Alter Ego., Junron that was secured on Tenoroc in the approximate amount of $362,000.00; this mortgage was in default and Debtor's co-conspirators stood to lose their entire investment. Debtor then sent a letter (Exhibit "B"), which he copied

in an email to Plaintiffs to assure Plaintiffs were aware that Debtor was supposedly threatening not discount the note by the $60,000 promised in Exhibit "C".

130.   Debtor, along with his co-conspirators, was on notice that all structures located in the Reynolds property had outstanding building permits that had failed inspections and that the defects in the mobile homes being conveyed rendered all homes unsuitable of occupancy and their use to produce the income represented. Debtor had direct control of Seller's duty to satisfy the Demolition liability existing in the Tenoroc property and knew that this was a latent, undisclosed liability being passed to Plaintiff/s. Debtor, along with his co-conspirators, knew that the infrastructure was failing in both properties. Debtor did not want to foreclose and expend the funds needed to correct these deficiencies; his co-conspirators were out of funds (see Exhibit "I") and the properties did not make enough to perform the repairs needed to sell the properties legitimately.

131.   Debtor had a long working relationship with the closing agent and title company through Fulco. Fulco refused to furnish Plaintiff/s the copies of the recorded documents in the chain of title on either property. All of the conspirators, including Debtor and had actual knowledge that the requirements called for in the Contractual documents and in the Title Commitments that had not been met and that the omitted requirements on both Properties would leave Plaintiff exposed to liability.

132.   Fulco had a copy of both contracts showing that the mobile homes were to be delivered to Plaintiff/s in full conformance with all code provisions and to be up to the current Polk County Building Code, at the time she received Zuckman 's disclosure of non-compliance and still disbursed Plaintiff/s' funds to Debtor.

133. At the time Debtor drafted the contracts for the purchase of the subject properties, and had his coconspirators sign each contractual document, Debtor and his co-conspirators had actual knowledge that the warranties in the contract could not and would not be met.

134. When Debtor's coconspirators signed the addendum/s Fulco drafted as insisted upon as a condition of closing by the Plaintiff/s, relying upon their constitutionally protected right to have their contract/s enforced by the judicial system of the State of Florida, all had actual knowledge that the warranties called for to survive the closing were in already in default.

135. Co-conspirator Zuckman has testified in the civil hearing pursuant to rule 702 hearings that he sent his disclosures of defects to Fulco on both properties to be conveyed.

136. That faxed document is stamped and dated 7:20PM May 1,2013, (Exhibit T) and was in the same fax Fulco received with the signed Addendum/s re-affirming all warranties; a disclosure on Tenoroc was missing from the files Fulco provided pursuant to requests in the Civil Action. Fulco hid the disclosure/s from Plaintiff.

137. As closing agent on these transactions, Fulco had fiduciary duty to the Plaintiff to obtain a payoff statement from the legal note holder (see Exhibit "C") Junron, but did not have any written statement of the actual payoff amount from Junron. Fulco's actions at all times indicate her knowledge that Junron and Yallip were merely "Alter Egos" for Debtor.

138. Debtor sent a letter on the letterhead of his related "Alter Ego" the Pillay Family Trust to his co-conspirators offering to discount the mortgage secured on Tenoroc by $60,000(see Exhibit "C"); Debtor signed this letter personally, not as an officer or member of Junron or any of its members or manager/s. This letter, emailed from Debtor is the document

Fulco used as a payoff statement from Junron though Junron is not mentioned in the letter.

139.   Coconspirators Reynolds Rd. LLC./Zuckman had an agreement with the other conspirators to have Plaintiff 4 Corners' down payment of $100,000 combined with Plaintiff Connection Wise' $200,000 down payment in order to met Debtor's demand for a payoff of $302,000. Fulco notified Debtor that she had Plaintiff/s' certified funds in hand after closing on the night of May 1, 2013, as instructed by Debtor.

140.   Debtor instructed Fulco, in writing, by email, to wire the funds on May 2, 2013 to his "Alter Ego" Yallip LP, with full knowledge that the contracts and the purchase money mortgages were procured through fraud; Fulco complied and wired Plaintiff/s' funds to Yallip Investments LP, even though she did not have all properly executed documents to legally transfer the real and personal properties as called for in the contractual documents.

141.   The funds wired to Yallip were never disbursed to Junron, but were used by Debtor and his wife, sons and daughters for their personal pleasures and expenses.  Debtor testified that Junron did not have a bank account.

142.   Plaintiff/s's contract/s called for all disclosures to be provided to Plaintiff within *5* days of the effective date of the contracts, on or About April 5, 2013 instead of on May 1, 2013 at 7:30 the night of the closing (see Exhibit "T"), the evidence in Fulco's files combined with co-conspirator Zuckman's testimony, the payoff statement used by Fulco, the fact that all conspirators had actual knowledge of the defaults of the contracts prior to accepting Plaintiff/s' funds all evidence the totality of the Debtor's and his coconspirators' scheme to defraud Plaintiff/s and cause Plaintiff/s losses.

143.  §523(a)(2)(A) specifically prohibits Debtor's discharge from either Plaintiff objecting to his discharge for money obtained through false

pretenses and actual fraud as fully described in ¶31,38,51,69,70,124,129 and 139.

WHEREFORE, the Plaintiff requests that the Court enter a judgment excepting the Debtor's discharge pursuant to 11 U.S.C. Sec. 523(2)(A)by false pretenses, false representations or actual fraud as it pertains to the Plaintiff for Debtor's participation in the conspiracy to defraud Plaintiff and grant other such relief that the Court deems appropriate.

**COUNT V- DEBTOR'S INTENT TO HINDER DELAY AND PARTICIPANT IN A CONSPIRACY TO DEFRAUD HIS CREDITORS THROUGH CONCEALMENT AND INAPPROPRIATE TRANSFERS OF PROPERTIES UNDER HIS CONTROL BEFORE FILING FOR RELIEF PURSUANT TO 11 U.S.C. Sec. 727(a)(2)(A)**

144.     Plaintiff re-alleges it's allegations contained in paragraphs 1 through 143 and paragraphs 154 through 225.

145.     Count II is brought pursuant to Sec. 727(a)(2)(A) of the bankruptcy code.

146.     The attached Exhibit HH, incorporated by reference, is Yallip's Bank statement for August 2014, the account ending in 3138, receiving funds due to Debtor's alter ego's Prevash and Lakeway on those entities sale of the properties Debtor controlled in Oklahoma and as sold to Greenvalley July 17, 2014.   As is clearly evidenced in this exhibit, these funds were freely used by Debtor and his family on personal expenditures.

147.     The documents provided to the Trustee in this action showing the money transfers from Voyager's and Reynolds Rd.'s Wells Fargo accounts to reimburse Debtor for funds he expended doing repairs on both properties.

148.     Debtor admitted that each of the separate debit cards proving withdrawals for personal entertainment, liquor, pet care, hairdressers and luxury items were carried and used by Debtor and each of his immediate family members without limit prior to filing his petition for relief under Chapter 7.

149.    As more fully described in  ¶16, 63, Debtor gave the Trustee an amended partnership agreement for Yallip in which he directly held 47%, but transferred to his family 11 months prior to filing his Petition.

150.    ¶31,34,36,58,61,63,67-69,92,147 & 149 further describe sales and transfers made before Debtor's Petition was filed and demonstrate Debtor's long term course of actions in his efforts to use other entities and his family to conceal all such transfers and acquisition of funds through the various people and entities he has maintained control over to this day.

151.    As a result of these transfers made within a year of filing for Chapter 7 relief, and in an effort to conceal Debtor's true assets, Debtor should not b e discharged from any creditor debt. This October statement also shows this account receiving proceeds on 10/24/2014from Debtor's concealed JP Morgan account and or a transaction on 10/24/2014 which involves the transfer of Debtor controlled property.


WHEREFORE, Debtor's actions in the case at hand were to hinder delay and defraud, the Plaintiff requests that the Court enter a judgment denying the  Debtor a total discharge of any creditor pursuant to 11 U.S.C. Sec. 727(a)(2)(A) and such other relief this Court deems fair and just.


## COUNT VI- DEBTOR'S INTENT TO HINDER DELAY AND PARTICIPANT IN A CONSPIRACY TO DEFRAUD HIS CREDITORS THROUGH CONCEALMENT AND INAPPROPRIATE TRANSFERS OF PROPERTIES UNDER HIS CONTROL AFTER FILING PURSUANT TO 11 U.S.C. Sec. 727(a)(2)(B)

152.    Plaintiff re-alleges the allegations of paragraphs 1-151 and 168 through 225.

153.    Count III is brought pursuant to Bankruptcy Section 727(a)(2)(B)

154.    Debtors' property in Indiatlantic Florida was sold on October 14, 2014, within a month of filing his Petition, and transferred though his alter ego Prevash, with is daughter, Prevashini, and his wife, June's assistance in his efforts to conceal this transaction.

155.    In Exhibit II attached hereto and incorporated by reference, Yallip's Bank of America October 2014 statement, shows $116,350.65 proceeds deposited from Debtor's undisclosed J.P. Morgan account and spent by Debtor and his family by using their personal debit cards issued under this account.

156.    Exhibit II also shows the transfer of $150,000.00 to Yallip's Bank of America Account ending in 3125on 10/30/2014, a month and ½ after filing his petition.   Plaintiff believes these are some of the same funds deposited from Plaintiff's purchase of the two subject properties May 1, 2013.

        WHEREFORE, Debtor's actions in the case at hand were to hinder delay and defraud, the Plaintiff requests that the Court enter a judgment denying Debtor from discharge of any creditor pursuant to 11 U.S.C. Sec. 727(a)(2)(B) and such other relief this Court deems fair and just.

## COUNT VII: CONCEALED AND FAILED TO KEEP OR PRESERVE BOOKS, DOCUMENTS, RECORDS AND PAPERS FROM WHICH DEBTOR'S FINANCIAL CONDITION AND BUSINESS TRANSACTIONS COULD BE ASCERTAINED PURSUANT TO 727(a)(3)

157.    Plaintiff adopts and re-alleges the allegations of paragraphs 1through 156 and 163 through 225.

158.    Count VII is an action pursuant to Section 727(a)(3) of the Bankruptcy Code.

159.    Debtor testified in his 341 hearings that he did not have bank accounts, tax returns or other records supporting his alter egos activities.

160.    Debtor's family members were managing members and or agents for the alter ego entities but did not maintain regular and customary business records as specifically described in ¶32,54,66,69,70,and 159.

161.    Plaintiff's gave Trustee a chart of all 14alter ego entities and their related property titles as quit claimed between the entities and family members in Debtor's efforts to conceal

ownership of all the assets he really controlled and as part of his long term plan to file for Chapter 7

relief claiming he never owned any property, nor did he control the entities he was the general partner

of, the registered agent of and or the managing member of.


WHEREFORE, Debtor's actions in the case at hand were to hinder delay and defraud, the

Plaintiff requests that the Court enter a judgment denying  the Debtor's discharge pursuant to 11

U.S.C. Sec. 727(a)(3)  such relief that the Court deems appropriate, just and fair.


## COUNT VIII: KNOWINGLY AND FRAUDULENTLY AND IN CONNECTION WITH THIS CASE AND PLAINTIFF'S CIVIL SUIT, MADE FALSE OATHS AND ACCOUNTS PURSUANT TO SECTION 727 (A)(4)(A)

162.    Plaintiff adopts and re-alleges the allegations of paragraphs 1 through 161 and

169 through 225.

163.    Count  VIII is an action pursuant to Section  727 (a)(4)(A) of the Bankruptcy

Code.

164.    Debtor's discharge is exempted because of all of the false statements sworn to in

Debtor's Petition and Statement of Financial Matters, listed above; ¶34,36,53,56,58,59,63,65-

67,70,92 & 148.

165.    Debtor's tax returns, and those he filed for Yallip, did not reveal his true

income.

166.    Debtor gave the trustee a copy of minuets for Yallip to 5-2012, but the

partnership agreement for Yallip was dated October 2013, after the Plaintiff's civil suit was

filed in August of 2013 in order to hide his true assets and business activity.

167.    Debtor knowingly and fraudulently in connection with this case, made false

oaths and accounts in his attempt to hid liability and estate assets.


WHEREFORE, Debtor's actions in the case at hand were to hinder delay and defraud,

the Plaintiff requests that the Court enter a judgment denying  the Debtor's discharge from all

creditors pursuant to 11 U.S.C. Sec. 727(a)(4)(A) for Debtor's false oaths and accounts made in connection with this case and for NY other relief this court deems appropriate, just and fair.

## COUNT IX- PRESENTED AND USED FALSE CLAIMS
## PURSUANT TO SECTION 727(a)(4)(B)

168.    Plaintiff adopts and re-alleges the allegations of paragraphs 1through 167. And 179 through 235.

169.    Count IX is an action pursuant to Section 727(a)(4)(B) of the Bankruptcy Code.

170.    Debtor made false claims in his Petition and in his Rule 341 hearings stating that he was not in control of the operation of the subject properties, that he did not act as his co-conspirator's agent, that he did not intentionally misrepresent the fact that these properties had never earned enough to meet their expenses since he took control of these properties in 2010 and 2011; 24, 25, 52-54,58-63, Debtor failed to list transfers in his bankruptcy petition.

171.    In Debtor's answers to the interrogatories in the civil suit, Debtor denied his business relationship with his wife, June, son, Brad, and daughter Prevashini, his alter ego entities of Lakeway, Prevash, Yallip, Pillay Family One, LLC and Yallip.

172.    In Debtor's answers to the interrogatories in the civil suit, Debtor denied his knowledge regarding his control of the two subject properties, his agency relationship to Voyager and Reynolds Rd. and co-conspirators Zuckman and Marostica.

173.    In Debtor's answers to the interrogatories in the civil suit, Debtor denied his knowledge of the true occupancy and historical income of the two subject properties.

174.    In Debtor's internet advertising of the two subject properties, and in various emails, Debtor claimed all mobile homes being conveyed were up to code when he was aware of their deteriorated conditions; some being subject to a notice of demolition and failed building department permits at the time of conveyance.

175.    In various emails to Plaintiff/s, Debtor denied having true records of the properties occupancy history and true annual expenses in cooperation with his coconspirators.

176.     Debtor filed false information on IRS tax returns he prepared and or was responsible for having prepared.

177.     Debtor presented and or used false claims to hide assets and liability to his creditors.

WHEREFORE, Debtor's actions in the case at hand were to hinder delay and defraud, the Plaintiff requests that the Court enter a judgment denying the Debtor's discharge pursuant to 11 U.S.C. Sec. 727(a)(4)(B) as to all of his creditors and grant other such relief that the Court deems appropriate, just and fair.


## COUNT X-RECEIVED MONEY AND ADVANTAGE THROUGH
## DEBTOR'S FRAUDULENT ACTS PURSUANT TO 11 U.S.A. SECTION 727(a)(4)( C) and (D)


178.     Plaintiff re-alleges the allegations of paragraphs 1 through 177 and 188 through 225..

179.     Count X is brought pursuant to Bankruptcy Section 727(a)(4)( C) and (D) of the bankruptcy code.

180.     Exhibit A details Debtor, along with his coconspirators, acts meant to defraud Plaintiff/s. Debtor's actions were knowingly and fraudulently done with the int.

181.     Debtor hid the fact from Plaintiff that Junron's promissory note was 2 years delinquent due to the lack of cash flow needed to do some repairs and pay bills incurred on both properties. See ¶ 22,29,30,31,35,38,48,51,73,76,77,85-86,96,101,102,105,109,112,113,117,122,123,128,130,133,134 & 142.

182.     Debtor posted presentations of both properties on the internet, leading Plaintiff/s to believe he was the owner, see ¶ 39,174.

183.     Debtor drafted contractual documents in his attempt to negate any Seller warranties, see ¶74, Exhibit "R"

184.     At all times during Debtor's dealings with Plaintiff's Debtor was aware that Plaintiff's would lose money under the contractual documents he negotiated, see ¶181 and its referenced paragraphs.

185.    Debtor and his coconspirators hid the fact that the mobile home units and infrastructure were not up to Polk County Code 11-107, see ¶27,35,77,132 & 174.

186.    Debtor withheld from the Trustee (Officer of the estate), entitled to possession, documents and records relating to Debtor's property and financial affairs. He continues to do so despite her requests .

WHEREFORE, Debtor's actions in the case at hand were to hinder delay and defraud, the Plaintiff requests that the Court enter a judgment excepting the Debtor's discharge pursuant to 11 U.S.C. Sec. 727(a)(4)( C) and (D) and grant other such relief that the Court deems appropriate, just and fair.

## COUNT XI-PURSUANT TO THE ALTER EGO DOCTRINE JUNRON FLORIDA INVESTMENTS, LLC. AND YALLIP LIMITED PARTNERS ARE LIABLE FOR DEBTOR'S ACTS

187.    Plaintiff adopts and re-alleges the allegations of paragraphs 1 through 186 .

188.    The Alter Ego doctrine is recognized in bankruptcy actions.

189.    Debtor's history of his interest in both of the subject properties is well documented.  Tenoroc was deeded to Junron Florida, Inc. in 2004 (Another of Debtor's "Alter Egos" used to conduct business and hid liability from creditors), then Junron Florida INC sold the property to Hwang (see above), but Debtor and his wife June Pillay carried back the purchase money mortgage for that sale of real property made by the entity Junron Florida, Inc.

190.    In January 2010,  Debtor and his wife, June Pillay, foreclosed on their mortgage secured on Tenoroc as a result of Junron Forida Inc.'s sale to Hwang and personally took title to Tenoroc.

191.    Debtor then quit claimed Tenoroc, without consideration, to a new "Alter Ego" limited liability company he formed with his wife called Ramona Lincoln Mobile

Home Park, LLC. (Hereinafter "Ramona") (Debtor is the recorded agent and his wife June is the managing member).

192.    Ramona sold Tenoroc to Voyager April 5, 2010; the warranty deed was signed by June Pillay as the Managing Manager of Ramona.

193.    Ramona assigned all its rights in the purchase money mortgage obtained from Voyager on May 7, 2010 to Junron, not a party in ownership.  (NOT Junron Florida Investments, INC., the entity that sold the property to Hwang).  Ramona's assignment of its Note/Mortgage was signed by June Pillay (wife/manager) and witnessed by Debtor.

194.    To the best of Plaintiff's knowledge at this time, Ramona never filed an income tax statement showing its profit gained through this sale to Voyager and Junron did not have a bank account nor a record of payments made on the mortgage it held from Voyager, if any, nor did it keep any separate company records or file tax returns on any payments it received on the mortgage it held.

195.    In December 2010, Debtor and his wife formed Yallip  Limited Partners (hereinafter Yallip). Debtor and his wife registered this general partnership in Arizona indicating each owned 47% (naming each one separately as a general partner in the recorded documents).

196.    Then, in April 9 of 2013, Debtor registered Yallip Limited Partners, LLC in Oklahoma with his son Bradley Pillay [hereinafter "Brad"] as the registered agent.   This partnership was filed with Debtor, his wife June, and his four children all as partners. Based upon the limited bank statements Plaintiff has been provided to date of this filing for Yallip, only Debtor and his Wife had authority to sign checks, since there were no cancelled checks provided showing Bradley Pillay's signature.

197.    Bradley Pillay, Debtor, his wife and all other children had debit cards to withdraw and use Yallip's Bank of America account ending in 3138.  The statements reflect that the entire family used Yallip's accounts, including the Arvast Bank account, for all personal purchases, including automobile loan payments, groceries, liquor, luxury

clothing and accessaries, health insurance for all, education fees, entertainment, vacations and other personal benefits also enjoyed by Debtor.

198.    Yallip paid for expenses incurred by other of Debtor's "alter ego" entities, including Prevash Investment, LLC (hereinafter "Prevash"), which entity he registered November 2010 in Florida.   These expenses included the monthly maintenance fees for the condo located at 995 N. Highway A1A #105, Indialantic, Brevard county Fl 32903, owned first by June Pillay along with Prevashini Pillay until they quit claimed their interests to Prevash.

199.    In Debtor's testimony before the Trustee, Carla Musselman, Debtor admitted that Prevash did not have its own bank account and that any monies paid to Prevash were not reported on any income tax return.

200.    Debtor furnished Musselman a lease on this condo as assigned to Ronald Pillay and recorded 10/13/2005 which states "And the Assignor does hereby authorize and empower the said Assignee, its successors and assigns, to collect the said rents, issues, profits, revenues, royalties, right and benefits, as they shall become due, and does hereby direct each of all of the tenants of the aforesaid premises to pay such rents as may now be due or shall hereafter become due to the said Assignee, its successors and assigns, upon demand for payment thereof of said Assignee, its successors and assigns." book6441/Page1738", but Debtor never shows up in the chain of title, since his wife, daughter and then Prevash were sequentially quit claimed the title, even though Debtor and his wife used this property as their own.

201.    Debtor also furnished Trustee, Musselman a quit claim deed made by these same assignors, recorded 8/21/12, granting the condo to Prevash Investments, LLC, Ronald Pillay- c/o Yallip Investments LP, Managing Member Pillay residing at 995 N. Highway A1A #105, Indialantic, Brevard county Fl 32903.

202.    A warranty Deed the Indiatlantic condo, however, was signed May 27, 2010 by different individuals, giving ownership of the condo to June Pillay (wife) and Prevashini Pillay (daughter); recorded 6/3/2010.

203.    June Pillay (wife) and Prevashini Pillay (daughter) signed a mortgage to Nationstar Mortgage, LLC, secured on the Indiatlantic condo, in June 2010.   That mortgage was a HUD mortgage and  included a second home rider wherein both June Pillay and Prevashini Pillay agreed June and Prevashini Pillay would occupy and use and keep this condo available at all times for their exclusive use, which was never the case. This mortgage also contained a standard governmental "due on sale clause" obviously ignored when they quit claimed the condo to Prevash a supposedly different and separate legal entity.

204.    In October 2014, after Debtor filed his Petition under Chapter 7 of the U.S. Bankruptcy code September 27, 2014, Prevash sold the Indiatlantic property and the money was deposited into the bank account for Yallip, its only member.


205.    To the best of Plaintiff/s's knowledge and belief, none of the lease payments made under the leases assigned, nor any of the sale proceeds was reported on any tax returns of Debtor, Yallip, June or Prevashini Pillay or Prevash.

206.    All legal documents for the Indiatlantic condo, and all of the above noted recorded documents, use Debtor's personal post office box (as used in Debtor's petition under this Chapter 7 action) as the correct mailing address for all of the above named parties and entities.

207.    The Florida property records for this Indiatlantic condo at the time Debtor filed under Chapter 7, show the owner as Prevash, P.O. Box 421047, Kissimmee, FL 34742-1047.  These records reflect the individuals who signed the Deed to June and Prevashini Pillay acquired the condo for $449,900.00 6/1/2005, while it was subject to Debtor's assignment of the lease rights.

208.    Then 6/3/2010 the Indiatlantic condo was deeded to June Pillay and Prevashini Pillay for $179,000.00.  Then the record reflects the Quit Claim Deed to Prevash for $10.00.   And finally the record reflects the sale 10/28/2014 by Prevash for

$236,000.00 signed by June Pillay as the general partner of Yallip, the sole member of Prevash.

209.    Debtor's use of all of his entities as mere instruments to conduct his business and avoid potential liability is particularly telling in that Yallip had registered as a domestic company in April 2013 in Oklahoma, reflecting each member of Debtor's family as an equal partner, while never dissolving the active Yallip entity as registered in Arizona.

210.    Yallip's 2013 tax return indicated that all of the real property interests owned by Prevash were in fact owned by Yallip and that only Debtor, wife June Pillay and daughter Prevashini had interests in all of these properties, including the Indiatlantic Condo.

211.    Debtor gave Trustee Musselman a Yallip Partnership Amendment, amending the Arizona registered partnership giving up his interest in Yallip dated October 30, 2013, after the Civil Lawsuit between Plaintiff/s's and Debtor was filed accusing Debtor of fraud and misrepresentation August 2013.

212.    Debtor also furnished Trustee Musselman minutes signed by all members of the Oklahoma registered version of Yallip dated 5/11/12, but the Oklahoma Yallip Investments LP was not registered until April 2013.

213.    Those minutes also called for Debtor to file his employee taxes, not Yallip, the employer from 5/ 11/2012, but those wages are not reflected in the joint tax return filed by June Pillay and Debtor in 2012.

214.    Yallip also did not file a tax return reflecting this change of ownership in 2012.

215.    In Debtor's Petition in this action, he stated that he lived at his daughter's house, located in Kissimmee, Fl, who obtained a warranty deed 7/2712011 from Fannie Mae. FNMA carried back a mortgage signed by Prevashini Pillay as a portion of her acquisition, using cross collateral of the White Cedar Ridge family home, used as Debtor's address, even though the deed was held by his Daughter, Prevashini.

216.    Prevashini Pillay then quit claimed Hindsda1e to Prevash for $1.00 as

recorded 3/29/2012. This HindsdaJe home was advertised for sale "by owner" and the telephone number in the ad is registered to Bradley Pillay in Talequah Oklahoma. FNMA's mortgage remained in full force and effect (with its due on sale clause) until it was paid off using Yallip's funds 11/ 12/20 12.

217.    January 2, 2015 Prevash quit claimed Hindsdale back to Prevasbini Pillay (daughter) for $1.00, which deed was recorded 2/18/15, after the civil lawsuit was filed in August of 2013 and after Debtor's petition for relief under coder Chapter 7 was filed in September 2014. Therefore, at the time Debtor claimed To Be Leasing the house from Prevashini on his petition, the family home was legally owned by Prevash not Prevashini; Debtor could not have a legal lease with Prevashini to occupy this home since the quit claim back to Prevashini was not for 5 months after Debtor filed his petition in bankruptcy.

218.    To the best of Plaintiff/s's knowledge and belief, neither Junron nor Yallip nor Debtor reported the $300,000 gain obtained through Debtor/coconspirators acts of fraud perpetrated upon the Plaintiff/s on any tax return.

219.    As stated previously, Junron held Voyager's mortgage secured on Tenoroc. Debtor made the fraudulent and misleading representations to Plaintiff/s to induce their purchase of the two subject properties, Tenoroc and Reynolds, in order to obtain the $302,000.00 discounted note amount if his coconspirators induced Plaintiff/s's to close on the purchases and release their money no later than May 1, 2013. Debtor then instructed co-conspirator Fulco to wire transfer Junron's funds into Yallip's bank account since Junron did not have a bank account and Junron was at all times merely the instrument of Debtor.

220.    Plaintiff/s would also bring to this Court's attention the fact that Debtor appears to have used Voyager and Reynolds as "Alter Egos" in that he signed documents given to Polk County's various departments as the owner of the properties conveyed by his coconspirators such as asking for an extension of Voyager's right to correct the Demolition status of the Tenoroc property, signed as owner on documents relating to Polk County's

Health Department relating to Tenoroc's well and septic systems, signed as owner on various building permit applications for both properties, etc., and in his postings of the subject properties for sale on the internet.

221.    Plaintiff demonstrates that (1) Debtor dominated and controlled Junron and Yallip to such an extent that these limited liability companies independent existence, is in fact non-existent and Debtor is, in fact an alter ego of these entities;(2) Junron and Yallip have been used fraudulently and for an improper purposes; and(3) The fraudulent or improper use of these entities caused injury to Plaintiff/s. To adhere to the doctrine of corporate entity would promote injustice and protect fraud.

222.    The doctrine of" Alter Ego Liability, is invoked when it is shown that the Alter Ego entities demonstrated a total disregard of the corporate and limited liability companies, using each as a mere instrumentality for the transaction of Debtor and his immediate families own affairs.

223.    The doctrine of "Alter Ego Liability" is invoked when it is shown when there is such unity of interest and ownership that the separate personalities of the legal entities and the owners no longer exist.

224.    By and through his conduct, Debtor, with the help of his immediate family members, has taken great care to muddy titles to properties and hide his liability with the consistent use of Alter Ego entities and family members, and even with the help of the entities Voyager and Reynolds, with the intent to inflict extraordinary economic loss on Plaintiff/s.

225. Debtor continued to write and sign checks on behalf of Yallip, which owned and or controlled Junron and Prevash, even subsequent to the filing of the bankruptcy petition.

WHEREFORE, the Plaintiff requests that the Court (I) enter a judgment determining that the corporate entities addressed in this count be determined to be the alter ego of the Debtor and therefore subject to administration by the trustee as assets of the

estate as Junron, Prevash, Lakeway, Pillay Family One, LLC, Pillay Family Trust and Yallip were all mere instruments of the Debtor whose assets were used to hide his true role as the controlling party and for any other relief such relief that the Court deems appropriate.

Respectfully submitted this 30th day of October, 2015:


FRANK A. PRINCIPE, ESQ .
2805 West Busch Blvd. Ste. 100 Tampa, FL 33618
Phone: (813) 915-0750
E-mail: Prinlaw@prodigy.net FL.
Bar No. 0715018
Attorney for Plaintiff